UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60033-CIV-MARRA/JOHNSON

TERRI MILSAP, et al.

      Plaintiffs
vs.

CORNERSTONE RESIDENTIAL
MANAGEMENT, INC., et al.

      Defendants.
_____/

## ORDER AND OPINION ON MOTION TO DISMISS THIRD AMENDED COMPLAINT

**THIS CAUSE** is before the Court upon Defendants' Motion to Dismiss Third Amended Complaint [DE 284]. This motion is fully briefed and ripe for review. The Court has carefully considered the matters raised in the motion and is otherwise fully advised in the premises.

### Introduction

This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of familial status in the rental of housing. The Complaint alleges violations of the Federal and Florida Fair Housing Acts. It is alleged that Defendants have engaged in a pattern or practice of conduct with the purpose and the effect of discriminating against families with minor children by discouraging them from renting and/or limiting the number of children who may live in apartment buildings that the Defendants own or manage. This discrimination is allegedly carried out through the use of, among other things,

unreasonably restrictive occupancy policies that limit the number of persons allowed to occupy rental units.  Third Amended Complaint ("Complaint" or "Compl."), DE 283, ¶ 1.  The Crux of the Complaint is that all defendants violated and continue to violate the Federal and Florida Fair Housing Acts by maintaining occupancy standards that are less than the presumptively reasonable "two persons per bedroom" guidelines propounded by Housing and Urban Development Regulations ("HUD").

Previously, this Court dismissed 48 defendants from this case in an Order and Opinion Granting Motion to Dismiss, which was directed to Plaintiffs' Second Amended Complaint.  The Court found that the "Plaintiffs cannot manufacture standing as to a particular defendant who did not inflict an injury by merely alleging the entity operates in an integrated fashion with another entity that did inflict a cognizable injury."  DE 278 at 12.  The Court noted that "Plaintiffs have not alleged any direct contact with those 48 defendants, nor have they alleged that they suffered from any actual or wrongful conduct as a direct result of actions taken by these 48 defendants."  DE 278 at 3.

In repleading the Complaint, Plaintiffs eliminated 21 properties that are outside of Miami-Dade and Broward Counties.  In addition, Plaintiffs now agree to dismiss two more properties, Harbor Cove Associates, Ltd. and Altamira Associates.  DE 289 at 2.  These two properties will be dismissed without prejudice.  This leaves 26 entity defendants that purportedly own buildings operated and

developed by Cornerstone Group[1] in Miami-Dade and Broward Counties.

Plaintiffs now assert standing by the individual plaintiffs against Sanctuary Cove Associates, Ltd. d/b/a Sanctuary Cove Apartments ("Sanctuary Cove") alone, and standing against the other 25 Cornerstone Group entity defendants by the fair housing organization, Housing Opportunities Project For Excellence, Inc. ("HOPE").

Defendants again move to dismiss the entities dismissed in the Court's prior Order.  Defendants argue that HOPE has not properly alleged standing and that the Florida state law claims should be dismissed for failure to exhaust administrative remedies.  Defendants also argue that Plaintiffs' concession that only HOPE has standing to sue the previously-dismissed defendants is an admission that the "class action" claims should be dismissed.

Defendants do not argue against the potential for HOPE's standing for those damages proximately caused by unlawful conduct towards its testers,[2] but assert that the Complaint is devoid of any allegation that there was any unlawful act perpetrated by the Defendants against HOPE's testers.  Defendants further assert that the Complaint does not allege a causal connection between any acts of the Defendants and HOPE's alleged injuries.

---

[1] Cornerstone Group Holdings, Inc., Cornerstone Group Development Corp., and Cornerstone Residential Management, Inc. are collectively referred to as "Cornerstone Group."

[2] "Testers" are individuals who, without the intent to rent an apartment, pose as renters for the purpose of collecting evidence of unlawful housing practice.  *See e.g., Ragin v. Harry Macklowe Real Estate*, 6 F.3d 898, 904 (2d Cir. 1993).

**Standard of Review**

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all factual allegations in a complaint as true and take them in the light most favorable to the plaintiff.  *See Erickson v. Pardus*, 127 S.Ct. 2197, 2200 (2007).  To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (citing Fed. R. Civ. P. 8); *see also Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1964 (2007); *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 346 (2005).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, [ ] a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. at 1964-65 (citations omitted).  "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965.  Plaintiff must plead enough facts to state a plausible basis for the claim.  *Id.*

## Discussion

### Question of Standing

The crucial elements of standing are injury-in-fact and causation. To demonstrate the "personal stake" in the litigation necessary to satisfy the Constitution, the party must suffer "a distinct and palpable injury," *Warth v. Seldin*, 422 U.S. 490, 501 (1975), that bears a "'fairly traceable' causal connection" to the challenged action. *Duke Power Co. v. Carolina Environmental Study Group, Inc.*, 438 U.S. 59, 72 (1978), (quoting *Arlington Heights v. Metropolitan Housing Dev. Corp.*, 429 U.S. 252, 261 (1977)). Accordingly, when an objection to a party's standing to litigate in federal court is constitutionally based, "the relevant inquiry is whether . . . the plaintiff has shown an injury to himself that is likely to be redressed by a favorable decision." *Simon v. Eastern Kentucky Welfare Rights Org.*, 426 U.S. 26, 38 (1976).

There is no dispute that the individual defendants and their families have standing to sue Sanctuary Cove. It appears Plaintiffs now rely on HOPE's standing to sue the remaining defendants. In determining whether HOPE has standing under the Fair Housing Act, the same inquiry that is made in the case of an individual is made to the organization, i.e., has HOPE alleged such a personal stake in the outcome of the controversy as to warrant its invocation of federal court

jurisdiction?  *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378-379 (1982).[3]  In *Havens,* the United States Supreme Court found that a fair housing organization has standing to sue when the defendant's racial steering practices impair the organization's ability to provide housing counseling and referral services.  In so finding, the Court stated:

> If, as broadly alleged, petitioner's steering practices have perceptibly impaired HOME's ability to provide counseling and referral services for low-and moderate-income homeseekers, there can be no question that the organization has suffered injury in fact.  Such concrete and demonstrable injury to the organization's activities with the consequent drain on the organization's resources, constitutes far more than simply a setback to the organization's abstract social interests.

*Id.* at 379.

In interpreting *Havens,* the Eleventh Circuit Court of Appeals recognized that "[w]hen a fair housing organization expends resources as a proximate result of the defendant's discriminatory conduct, and those resources would have been devoted to other activities consonant with its mission were it not for the offending conduct, it suffers injury independent of that suffered by individuals in the affected housing market." *Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc.*, 236 F.3d 629, 642 (11th Cir. 2000).  The Court rejects Defendants' assertion that Hope must have used a tester at a particular defendant entity in

---

[3] The United States Supreme Court has previously recognized that organizations are entitled to sue on their own behalf for injuries they have sustained. *E.g., Warth v. Seldin*, 422 U.S. 490, 511 ( 1975).

order to establish standing to sue that entity.  While the use of testers "helps to identify discrimination" *id.,* it is not a prerequisite to establishing standing so long as the housing organization has alleged and can demonstrate its resources have been diverted from the activities consonant with its mission as a proximate result of the defendant's discriminatory conduct.[4]

**HOPE's Injuries**

The Complaint alleges that Defendants violated the Federal and Florida Fair Housing Acts by refusing to rent, or refusing to negotiate for the rental, a dwelling based upon familial status.  Compl. ¶ 103.  It is alleged that each and every defendant has violated and continues to violate the Federal and Florida Fair Housing Acts by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.  Compl. ¶¶ 16-43, 47, 86-87.  As a result of these alleged discriminatory actions by all named defendants, HOPE alleges the following claims of injury:

> Defendants' discriminatory actions have frustrated HOPE's goal of promoting equality, nullified HOPE'S numerous educational programs, and have forced HOPE to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions. . .   As a result, the described discriminatory

---

[4] While it is not necessary to employ the futile gesture doctrine to show standing against the Defendants' properties not tested, this doctrine would be appropriate under the circumstances alleged.  *Resnick v. Magical Cruise Co., Ltd.,* 148 F. Supp. 2d 1298, 1302 (M.D. Fla. 2001); *Pinchback v. Armistead Homes Cprp.,* 689 F. Supp. 541 (D. Md. 1988), *judgment aff'd in part, vacated in part on other grounds,* 907 F.2d 1447 (4th Cir. 1990).

> actions undertaken by all named Defendants have injured HOPE by (a) interfering with the efforts and programs of HOPE which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced HOPE to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of HOPE's constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating HOPE's mission and purpose.

Compl. ¶¶ 95, 97, 107, 109.

If, as broadly alleged, Cornerstone Group's practices have perceptibly impaired HOPE's ability to provide education and referral services for low-and moderate-income homeseekers, binding precedent provides that HOPE has adequately alleged injury-in-fact. These allegations of expenditure and diversion of resources on testing and educational programs in the past and in the future to counteract Defendants discrimination are sufficient to give HOPE standing to bring this action. *Havens Realty Corp*, 455 U.S. at 379; *Village of Bellwood v. Dwivedi*, 895 F.2d 1521, 1526 (7th Cir. 1990) ("the only injury which need be shown to confer standing on a fair-housing agency is deflection of the agency's time and money from counseling to legal efforts directed against discrimination"); *Central Alabama Fair Housing Center, Inc. v. Lowder Realty Co., Inc.*, 236 F.3d 629, 642 (11th Cir. 2000). Of course, HOPE will have to demonstrate at trial that it has indeed suffered impairment in its role of bringing about equality of opportunity to minorities and others in housing from any particular defendant before it will be entitled to judicial relief. *Havens Realty Corp*, 455 U.S. at 379 n. 21.

Previously, this Court granted Defendants Motion to Dismiss finding that the "Plaintiffs cannot manufacture standing as to a particular defendant who did not inflict an injury by merely alleging the entity operates in an integrated fashion with another entity that did inflict a cognizable injury." DE 278 at 12.  The Court noted that the standard is "whether Plaintiffs have shown a causal connection between the asserted injury-in-fact and the challenged actions of the defendants" and commented that it did not believe Plaintiffs could replead in a way that standing could be alleged.  DE 278 at 5, 13.  That statement was made in regard to Plaintiffs' theory of liability based on all defendants operating as an "integrated enterprise."  In arguing against dismissal of Plaintiffs' Second Amended Complaint, Plaintiffs only made a passing reference to HOPE's standing as a basis to proceed against the remaining defendants.  *See* DE 133, ¶ 119; DE 262, ¶¶ 10, 11.  At the time, the entire focus of Plaintiffs' argument was the "integrated enterprise" theory of liability.  Such is not the case now.  Plaintiffs have focused their argument and the Court's attention on HOPE's organizational standing as a basis for proceeding against the defendants within the geographic area that HOPE services, and the Court now concludes that Plaintiffs have sufficiently alleged a casual connection between Defendants' alleged discrimination and HOPE's alleged injuries.  The Third Amended Complaint sufficiently alleges that HOPE's injuries are directly traceable to all of the Defendants' discriminatory occupancy restrictions.

**Class Claims**

Defendants argue that since there are no claims against the previously-dismissed defendants by any of the named families with children, the class claims must be dismissed. At this juncture, it is premature to determine the question of class certification. The Court will consider the viability of a class when that issue is fully briefed.

**Florida State Law Claims**

Florida's Fair Housing Act, §§ 760.20 to 760.37, Fla. Stat., provides that it is unlawful to discriminate on the basis of race, color, national origin, sex, handicap, familial status, or religion in the provision of housing and various housing-related services. The Florida Commission on Human Relations is charged with administration of the Florida Fair Housing Act and is granted broad investigatory and enforcement powers in that regard. *See* Fla. Stat. §§ 760.31(4), 760.32(1).

Defendants argue that as a matter of law, Plaintiffs' fair housing claim is barred by the doctrine of exhaustion of administrative remedies. The relevant portions of the Florida Fair Housing Act say any person claiming injury because of housing discrimination "may file a complaint" with the Florida Commission on Human Relations. Fla. Stat. §§ 760.34, 760.35. This language has been interpreted to require exhaustion of administrative remedies before the Commission on Human Relations as a statutory prerequisite for filing civil suit against a residential landlord for discrimination in housing under Florida's Fair Housing Act. *Belletete*

*v. Halford,* 886 So. 2d 308 (Fla. Dist. Ct. App. 2004); Fla. Stat. §§ 760.34, 760.35.

In making this determination, the *Belletete* Court relied upon the decision *Ross v. Jim Adams Ford, Inc.*, 871 So.2d 312 (Fla. Dist. Ct. App. 2004). In *Ross*, the court noted that Section 760.11, Florida Statutes, which establishes administrative and civil remedies for violations of the Florida Civil Rights Act, contains essentially the same "may file" language as the Florida Fair Housing Act. The *Ross* Court concluded that the permissive "may file" provision in the Florida Civil Rights Act is not an option and anyone wishing to pursue either a lawsuit or an administrative proceeding must first file a complaint with the Florida commission or its federal counterpart. *Id*. at 315. No other cases are cited or have been found that address this particular issue.

To determine the effect of a Florida statute, a District Court must follow Florida case law dealing with the statute's interpretation. As the only law published on the issue holds that Florida's Fair Housing Act claims are barred unless administrative remedies are exhausted, and the instant complaint does not allege that Plaintiffs have satisfied this requirement and no evidence has been presented showing compliance with this prerequisite, Plaintiffs' Fair Housing Act claims will be dismissed without prejudice.

## Conclusion

Accordingly, for the reasons stated above, it is hereby

**ORDERED AND ADJUDGED** that Defendants' Motion to Dismiss Third Amended Complaint [DE 284] is **GRANTED IN PART AND DENIED IN PART**. The request to strike the allegations as to the previously-dismissed defendants is denied as moot. Harbor Cove Associates, Ltd. and Altamira Associates are dismissed without prejudice. All claims under Florida's Fair Housing Act are dismissed without prejudice for failure to exhaust administrative remedies. The Plaintiffs are instructed to file a Fourth Amended Complaint to correct the scriveners' errors of incorporating the preceding paragraphs in each of the three counts, alleging discrimination to persons with disabilities in ¶ 38, including Ms. Toolen in the jury demand and to delete those defendants and claims that are dismissed herein. Defendants will not be permitted to move to dismiss the Fourth Amended Complaint filed consistent with this Order.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 5th day of May, 2008.

                              KENNETH A. MARRA
                              United States District Judge

Copies furnished to:
All counsel of record