IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60033-CIV-MARRA/SELTZER

TERRI MILSAP, individually and as the parent of
TRISTAN BEAL, and TERRANCE MILSAP;
DONNA WEISSINGER, individually and as parent
of STEPHANIE EMILY THOMPSON, ANTHONY
MICHAEL THOMPSON and JOSEPH STEPHEN
THOMPSON; JENNIFER TOOLEN individually and
as parent of ASHLEY TOOLEN and KAREN TOOLEN;
CASEY LOCKHART, individually and as parent of
LATERIA SMITH, NY'CORIA THOMAS and K'NIYAH
ST. LOUIS; and HOUSING OPPORTUNITIES PROJECT
FOR EXCELLENCE, INC.,   on behalf of themselves and
all others similarly situated,

         Plaintiffs,

vs.

CORNERSTONE RESIDENTIAL MANAGEMENT, INC.; CORNERSTONE GROUP
HOLDINGS, INC.; CORNERSTONE GROUP DEVELOPMENT CORP.; SANCTUARY
COVE ASSOCIATES, LTD. d/b/a SANCTUARY COVE APARTMENTS; LAGUNA POINTE
ASSOCIATES, LTD.; d/b/a LAGUNA POINTE APARTMENTS; EAGLE POINTE
ASSOCIATES, LTD.; d/b/a EAGLE POINTE APARTMENTS; TUSCANY PLACE
ASSOCIATES., LTD., d/b/a  TUSCANY PLACE  APARTMENTS; ST. CROIX
ASSOCIATES, LTD., d/b/a ST. CROIX APARTMENTS; BAYWINDS ASSOCIATES, LTD.,
d/b/a BAYWINDS APARTMENTS; ALHAMBRA COVE ASSOC., LTD., d/b/a ALHAMBRA
COVE APARTMENTS; BONITA POINTE ASSOCIATES, LTD., d/b/a BONITE POINTE
APARTMENTS; BANYAN POINTE ASSOCIATES, LTD. d/b/a BANYAN POINTE
APARTMENTS; RIVER OAKS HOLDING, LTD. d/b/a RIVER OAKS APARTMENTS;
MONTEREY POINTE ASSOCIATES, LTD. d/b/a MONTEREY POINTE APARTMENTS;
CAPTIVA CLUB ASSOCIATES, LTD. d/b/a CAPTIVA CLUB APARTMENTS; CENTER
COURT ASSOCIATES, LTD. d/b/a CENTER COURT APARTMENTS; DORAL TERRACE
ASSOCIATES, LTD., d/b/a    DORAL TERRACE APARTMENTS; EAGLES LANDING
ASSOCIATES, LTD. d/b/a EAGLES LANDING; GOLDEN ASSOCIATES, LTD. d/b/a
GOLDEN LAKES; HIBISCUS POINTE ASSOCIATES, LTD. d/b/a HIBISCUS POINTE
APARTMENTS; GOLDEN ASSOCIATES II, LTD. d/b/a HIDDEN COVE; MARBRISA
ASSOCIATES, LTD. d/b/a MARBRISA APARTMENTS; SIESTA POINTE ASSOCIATES,
LTD. d/b/a SIESTA POINTE APARTMENTS;  PARK VIEW ESTATES, LTD. d/b/a
SPINNAKER COVE; VILLA ESPERANZA ASSOCIATES, LTD. d/b/a VILLA ESPERANZA
APARTMENTS; VILLA HERMOSA LTD. d/b/a VILLA HERMOSA APARTMENTS;
CROSS KEYS ASSOCIATES, LTD. d/b/a CROSS KEYS APARTMENTS; BRIDGEWATER
PLACE ASSOCIATES, LTD. d/b/a BRIDGEWATER PLACE; OAKS AT POMPANO, LTD.

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 2*

d/b/a POMPANO OAKS,

    Defendants.

_____/

## THIRD AMENDED CLASS ACTION COMPLAINT FOR DECLARATORY JUDGMENT, PERMANENT INJUNCTIVE RELIEF AND DAMAGES

1.      This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of familial status in the rental of housing. Defendants have engaged in a pattern or practice of conduct with the purpose and the effect of discriminating against families with minor children by discouraging them from renting and/or limiting the number of children who may live in apartment buildings that the Defendants own or manage. This discrimination has been carried out through the use of, among other things, unreasonably restrictive occupancy policies that limit, the number of persons allowed to occupy rental units. This action arises under the Fair Housing Act of 1968, as amended, 42 U.S.C. § 3601 et seq. (The "Fair Housing Act").

### Jurisdiction and Venue

2.      Jurisdiction is conferred on this Court by 42 U.S.C. §3613, and §3617, 28 U.S.C. §1331, 28 U.S.C. §2201-2202, and 28 U.S.C. §1343. Pendent claims are asserted pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this District under 28 U.S.C. § 1391 as this is the district in which the events giving rise to the Plaintiff' claims occurred and as this is an action which is not founded solely on diversity of citizenship.

### Parties

*Law Offices of Matthew W. Dietz, P.L. * 2990 Southwest 35th Avenue * Miami, Florida 33133*

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 3*

<u>*Plaintiffs*</u>

4.    The Plaintiff, TERRI MILSAP, is a single mother of two young boys, Plaintiff

TRISTAN BEAL, and Plaintiff TERRANCE MILSAP, and presently lives, with her family, in

Broward County, FL and all Plaintiffs are otherwise *sui juris.*

5.    The Plaintiff, DONNA WEISSINGER, is a single mother who lives with her

daughter, Plaintiff, STEPHANIE EMILY THOMPSON, and two young boys, Plaintiff

ANTHONY MICHAEL THOMPSON, and, Plaintiff JOSEPH STEPHEN THOMPSON, and

presently resides, in Brevard County, Florida and all Plaintiffs are otherwise *sui juris.*

6.    The Plaintiff, JENNIFER TOOLEN, is a single mother of two daughters, parent of

Plaintiff ASHLEY TOOLEN, and Plaintiff KAREN TOOLEN, and presently lives at 5807 West

McNab Rd., North Lauderdale, Florida, and all Plaintiffs are otherwise otherwise *sui juris.*

7.    The Plaintiff, CASEY LOCKHART, is a single mother of three daughters, parent of

Plaintiff, LATERIA SMITH; Plaintiff, NY'CORIA THOMAS; and Plaintiff, K'NIYAH ST.

LOUIS, and presently lives in Broward County, FL 33311 and all Plaintiffs are otherwise *sui juris.*

8.    The Plaintiff, HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE,

INC. (hereinafter H.O.P.E., Inc.), is a private fair housing, Florida not-for-profit, 501 (c) 3

corporation established in 1988.  H.O.P.E., INC. provides information about and seeks to enforce

fair housing laws for the people of Broward and Miami-Dade County who have been denied

housing of their choice.  H.O.P.E., INC. accomplishes these goals by a three-tiered system of

private enforcement, education outreach and counseling to achieve its mission to ensure fair and

equal housing opportunities for all people.  Its programs are designed to ensure that people are

offered the right to select housing of their choice without discrimination based on race, religion,

color, national origin, sex, disability, marital or familial status, or such other protected classes as

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 4*

may be conferred by federal, state or local laws. H.O.P.E., INC. diverts significant resources in both Broward and Miami-Dade County in its ongoing effort to prevent and eliminate housing discrimination. H.O.P.E., INC. is the only such organization performing these functions in these two counties.

### *Defendants*

9.      Defendants CORNERSTONE GROUP HOLDINGS, INC., CORNERSTONE GROUP DEVELOPMENT CORP.; and CORNERSTONE RESIDENTIAL MANAGEMENT, INC. are Florida corporations or Limited Liability Partnerships and are collectively known as and referred to herein as CORNERSTONE GROUP.

10.      The Defendant, CORNERSTONE RESIDENTIAL MANAGEMENT, INC. (hereinafter CORNERSTONE RESIDENTIAL) is a Florida Corporation, licensed to and doing business in Broward County Florida.

11.      According to their published information, CORNERSTONE GROUP was founded in 1993, and has since developed fifty-two (52) apartment communities in the State of Florida consisting of more than 15,000 multifamily rental and condominium units throughout Florida (over 8,000 in South Florida) and are now ranked as the 10th largest multifamily developer in the United States – the 5th largest in Florida -- by the National Association of Home Builders.

12.      These apartment communities are low-income rental housing.  In exchange for valuable consideration, CORNERSTONE GROUP agreed to develop and maintain such low income rental housing in compliance with regulations promulgated under Section 8 of the United States Housing Act of 1937, Section 42 of the Internal Revenue Code of 1986, the rules and regulations of the Florida Housing Finance Corporation Act, §§ 420.501-420.516, in addition to the requirements of the Florida and Federal Fair Housing Act.

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 5*

13.    Pursuant to information and belief, the following are CORNERSTONE GROUP low-income housing properties that have either discriminated against the individual named Plaintiffs and/or prevented, violated and/or interfered with H.O.P.E., INC.'s attempt to prevent and eliminate housing discrimination in Miami-Dade and Broward Counties.

a.    In Miami-Dade County, the low income housing owned and operated by CORNERSTONE GROUP is as follows:

i.        Alhambra Cove, 240 units

ii.       Baywinds, 204 units.

iii.      Bonita Pointe, 164 units

iv.      Captiva Club, 136 units

v.       Center Court – Miami, 589 units

vi.      Crossing at University, 320 units

vii.     Doral Terrace Apartments, 256 units

viii.    Eagle Landing, 321 units

ix.      Golden Oaks, 280 units

x.       Hibiscus Point, 212 units

xi.      Hidden Cove – Miami, 144 units

xii.     Marbrisa, 368 units

xiii.    Monterey Pointe, 336 units.

xiv.     River Oaks, 160 units

xv.      Siesta Pointe, 392 units,

xvi.     Spinnaker Cove, 220 units,

xvii.    Tuscany Place, 340 units,

    xviii.      Villa Esperanza, 192 units,

    xix.      Villa Hermosa, 76 units.

b.    In Broward County, the low income housing owned and operated by CORNERSTONE GROUP is as follows:

    i.      Banyan Pointe, 300 units

    ii.      Bridgewater Place, 312 units

    iii.      Cross Keys, 82 units

    iv.      Cross Keys II, 240 units

    v.      Eagle Pointe, 192 units

    vi.      Laguna Pointe, 188 units.

    vii.      Oaks at Pompano, 224 units

    viii.      Sanctuary Cove, 292 units

    ix.      St. Croix, 246 units

14.    CORNERSTONE GROUP reports that in 2004, their profitable and strategic growth led to a near doubling in the size of its workforce and corporate facilities. CORNERSTONE GROUP has more than 370 employees system-wide, gross annual revenues approaching $200 million, and a development/management real estate portfolio aggregately valued at almost $1 billion.

15.    Defendants CORNERSTONE RESIDENTIAL and CORNERSTONE GROUP are related companies that own and operate all of the above listed apartment communities. While said ownership is through jointly owned corporations and limited partnerships; all control and decision making for each and every corporation is from Cornerstone Group.

16.    The Defendant, SANCTUARY COVE ASSOCIATES, LTD. d/b/a SANCTUARY

COVE APARTMENTS (hereinafter SC APARTMENTS) is a Florida Limited Partnership, owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or SC APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

17.    The Defendant, LAGUNA POINTE ASSOCIATES, LTD., d/b/a LAGUNA POINTE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or LAGUNA POINTE ASSOCIATES, LTD., d/b/a LAGUNA POINTE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

18.    The Defendant, EAGLE POINTE ASSOCIATES, LTD., d/b/a EAGLE POINTE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or EAGLE POINTE ASSOCIATES, LTD., d/b/a EAGLE POINTE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

19. The Defendant, TUSCANY PLACE ASSOCIATES, LTD., d/b/a TUSCANY PLACE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or TUSCANY PLACE ASSOCIATES, LTD., d/b/a TUSCANY PLACE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

20. The Defendant, ST. CROIX ASSOCIATES, LTD., d/b/a ST. CROIX APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or ST. CROIX ASSOCIATES, LTD., d/b/a ST. CROIX APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

21. The Defendant, BAYWINDS ASSOCIATES, LTD, d/b/a BAYWINDS APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida, The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or BAYWINDS ASSOCIATES, LTD., d/b/a BAYWINDS APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 9*

per bedroom" guideline propounded by HUD.

22.     The Defendant, ALHAMBRA COVE ASSOC., LTD, ALHAMBRA COVE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or ALHAMBRA COVE ASSOC., LTD., d/b/a ALAHAMBRA COVE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

23.     The Defendant, BONITA POINTE ASSOCIATES, LTD., d/b/a BONITA POINTE ASSOCIATES, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or BONITA POINTE ASSOCIATES, LTD., d/b/a BONITA POINTE ASSOCIATES, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

24.     The Defendant, BANYAN POINTE ASSOCIATES, LTD., d/b/a BANYAN POINTE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or BANYAN POINTE ASSOCIATES, LTD., d/b/a BANYAN POINTE APARTMENTS, have at all times relevant violated and continue to violate

the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

25.    The Defendant, RIVER OAKS HOLDING, LTD., d/b/a RIVER OAKS APARTMENTES, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or RIVER OAKS HOLDING, LTD., d/b/a RIVER OAKS APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

26.    The Defendant, MONTEREY POINTE ASSOCIATES, LTD., d/b/a MONTEREY POINTE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or ST. MONTEREY POINTE ASSOCIATES, LTD., d/b/a MONTEREY POINTE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

27.    The Defendant, CAPTIVA CLUB ASSOCIATES, LTD., d/b/a CAPTIVA CLUB APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or CAPTIVA CLUB ASSOCIATES, LTD., d/b/a CAPTIVA CLUB

APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

28.    The Defendant, CENTER COURT ASSOCIATES, LTD., d/b/a CENTER COURT APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-County County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or CENTER COURT ASSOCIATES, LTD., d/b/a CENTER COURT ASSOCIATES, LTD., have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

29.    The Defendant, DORAL TERRACE ASSOCIATES, LTD., d/b/a DORAL TERRACE ASSOCIATES, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or DORAL TERRACE ASSOCIATES, LTD., d/b/a DORAL TERRACE ASSOCIATES, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

30.    The Defendant, EAGLES LANDING ASSOCIATES, LTD, d/b/A EAGLES LANDING APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or

CORNERSTONE RESIDENTIAL and/or EAGLES LANDING ASSOCIATES, LTD., d/b/a EAGLES LANDING APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

31.     The Defendant, GOLDEN ASSOCIATES, LTD., d/b/a GOLDEN LAKES APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or GOLDEN ASSOCIATES, LTD., d/b/a GOLDEN LAKE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

32.     The Defendant, HIBISCUS POINTE ASSOCIATES, LTD., d/b/a HIBISCUS POINTE, APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or HIBISCUS POINTE ASSOCIATES, LTD, d/b/a HIBISCUS POINTE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

33.     The Defendant, GOLDEN ASSOCIATES II, LTD., d/b/a HIDDEN COVE APARTMENTS is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade

County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or GOLDEN ASSOCIATES II, LTD. d/b/a HIDDEN COVE APARTMENTS, have at all time relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

34.    The Defendant, MARBRISA ASSOCIATES, LTD., d/b/a MARBRISA APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or MARBRISA ASSOCIATES, LTD., d/b/a MARBRISA APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

35.    The Defendant, SIESTA POINTE ASSOCIATES, LTD., d/b/a SIESTA POINTE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or SIESTA POINTE ASSOCIATES, LTD., d/b/a SIESTA POINTE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

36.    The Defendant, PARK VIEW ESTATES, LTD., d/b/a SPINNAKER COVE APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE

GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or PARK VIEW ESTATES, LTD., d/b/a SPINNAKER COVE APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

37.    The Defendant, VILLA ESPERANZA ASSOCIATES, LTD. is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or VILLA ESPERANZA ASSOCIATES, LTD., d/b/a VILLA ESPERANZA APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

38.    The Defendant, VILLA HERMOSA LTD., d/b/a VILLA HERMOSA APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Miami-Dade County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or VILLA HERMOSA LTD., d/b/a VILLA HERMOSA APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

39.    The Defendant, CROSS KEYS ASSOCIATES, LTD., d/b/A CROSS KEYS I and II

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 15*

APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or CROSS KEYS ASSOCIATES, LTD., d/b/a CROSS KEYS I and II APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

40.    The Defendant, BRIDGEWATER PLACE ASSOCIATES, LTD., d/b/a BRIDGEWATER APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or BRIDGEWATER PLACE ASSOCIATES, LTD., d/b/a BRIDGEWATER APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

41.    The Defendant, OAKS AT POMPANO, LTD., d/b/a POMPANO OAKS APARTMENTS, is a Florida Limited Partnership owned and operated by CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL, licensed to and doing business in Broward County, Florida. The Defendants, CORNERSTONE GROUP and/or CORNERSTONE RESIDENTIAL and/or OAKS AT POMPANO, LTD., d/b/a POMPANO OAKS APARTMENTS, have at all times relevant violated and continue to violate the Federal and Florida Fair Housing Act by maintaining occupancy standards that are less that the presumptively reasonable "two persons per bedroom" guideline propounded by HUD.

## CLASS ALLEGATIONS

42.    Respectfully, this case involves two (2) separate classes.

a.    Class One is defined as all families with children who were denied, or otherwise discriminated against, in their efforts to obtain housing at a Cornerstone Group managed housing facility due to their familial status as defined by Section 802, 42 U.S.C. §3602, and who do not presently reside in a listed Cornerstone Group developed or managed housing facility.

b.    Class Two is defined as all families with children who currently reside in a Cornerstone Group managed housing facility and were steered to larger and more expensive units because of their familial status as defined by Section 802, 42 U.S.C. §3602.

43.    The members of each class are so numerous that joinder of all such persons is impracticable and the disposition of their claims in a class action is a benefit to the parties and to the Court.  The time periods applicable to the claims asserted herein are the maximum periods allowed under the applicable Statutes of Limitations.

44.    There is a well defined community of interest in the questions of law and fact involved affecting the parties to be represented in that they were all subject to the common discriminatory policies and procedures that discriminate against families with children in violation of the Fair Housing Act.

45.    Common questions of law and fact predominate.  Among the common questions of fact is the legitimacy of restrictive occupancy standards for each development, as set by the Defendants, forcing families with more than one child into larger units or other developments and the use of more restrictive requirements in order to screen out occupants. Common question of law are extremely limited and include the application of U.S. Department of Housing and Urban

Development Regulations regarding occupancy standards and defenses related thereto. Similarly, the claims and defenses to be raised by and against the parties herein are typical of the claims or defenses which would be raised by the members of the classes if they were a party to this action.

46.     The relief sought herein is for the benefit of all members of the classes and consistent injunctive relief and damages should be provided for each injured party who has suffered on account of the Defendants' failure to comply with law.

47.     Prosecution of this matter by individual members of the class would only create a risk of inconsistent and varying adjudications and the establishment of incompatible standards by Defendants.

48.     The listed Plaintiffs will fairly and adequately protect the interests of the class they seek to represent. They are committed to vigorously litigating this matter.  To that end, they have retained counsel experienced in handling class claims.  Neither Plaintiffs nor their counsel have any interest that might cause them not to vigorously pursue this claim.

49.     A class action is a superior method for the fair and efficient adjudication of this controversy and these claims should be certified pursuant to Rule 23(b)(1) and 23(b)(3), Federal Rules of Civil Procedure.

50.     References to Plaintiffs shall be deemed to include the named Plaintiffs and each member of the class, unless otherwise indicated.

## FACTS AS TO CLASS REPRESENTATIVES

51.     Sanctuary Cove is a development owned by Defendant SC APARTMENTS and managed by CORNERSTONE RESIDENTIAL. Sanctuary Cove is a 292-unit multifamily rental community located at 5301 West McNab Road, North. Lauderdale, Florida. A former miniature golf area, the Mediterranean-styled community houses 13 buildings and a clubhouse on 17 acres.

52.    As a management company, CORNERSTONE GROUP, is the disclosed agent for the owners of said property, SC APARTMENTS, and as such, each of the individual Defendants in taking the actions alleged in the Complaint were the agents, principals, or co-conspirators of one another.

53.    The Fair Housing Act was amended in 1988 to prohibit, *inter alia,* housing practices that discriminate on the basis of familial status. 42 U.S.C. §§. 3601-19. "Familial status," as relevant to this case, is defined by the Act as "one or more individuals (who have not attained the age of eighteen years) being domiciled with ... (1) a parent or another person having legal custody of such individual or individuals…… *Id.* at § 3602(k); 24 C.F.R. § *100.20.*

54.    Plaintiff, TERRI MILSAP, is a single mother of two young boys who is "low income tenant" within the meaning of 26 U.S.C. § 42(g)(1).

55.    Due to her income, MILSAP was eligible for a Section 8 federal rental assistance voucher for a two-bedroom unit for MILSAP and her boys. MILSAP waited for five years to obtain a Section 8 voucher; however, MILSAP was required to use the voucher to obtain housing in a short period of time, upon the expiration of such time, such voucher would be worthless.

56.    On or about 3:30 P.M. on Tuesday, October 19, 2004, TERRI MILSAP went to Sanctuary Cove, located at 5301 West McNab Road, to determine whether there were apartments available for her and her family.

57.    Upon entering the premises, MILSAP found a document on the front desk entitled "Rental Standards", a true and correct copy of which is attached hereto as Exhibit "A".

58.    The policy published by the Defendants is as follows: "Our management company has established the following limits on occupancy at Sanctuary Cove Apartments:

   One Bedroom:       Maximum of Two (2) people (2 adults)

| Two Bedroom: | Maximum of Three (3) people (couple, & 1 heart beat per room) |
| Three Bedroom: | Maximum of Four (4) people (couple, & 1 heart beat per room) |

59.    At this time, MILSAP became upset and spoke with a representative from CORNERSTONE MANAGEMENT. She explained that because of the additional rules at Sanctuary Cove, she did not qualify for housing because she had a 2 bedroom voucher.

60.    The representative asked MILSAP how many people would be in the apartment. When MILSAP said three, "me and my two boys", the representative said that she would need a three bedroom.  When MILSAP tried to argue that the State of Florida allows same sex children to share a room, the representative said that MILSAP still would not qualify for a two-bedroom.

61.    Ms. MILSAP could not obtain a three bedroom, as she could not apply her Section 8 voucher to the three-bedroom apartment.

62.    At that time, MILSAP asked for a card for the person in charge, Jill DeBoy. MILSAP attempted to call Ms. DeBoy, but was told that Ms. DeBoy did not have an answering machine and to continue to try.

63.    Because she could not rent an apartment at Sanctuary Cove, TERRI MILSAP had no option other than to accept less desirable housing for herself and her family.

64.    Immediately after this incident, TERRI MILSAP went to H.O.P.E., INC. to complain about this discriminatory housing practice. H.O.P.E., INC. engaged four testers to determine the validity of Ms. MILSAP's complaint.

65.    On Monday, December 13, 2004, Plaintiff, DONNA WEISSINGER picked up her three children, Stephanie, 14 years old, Anthony, 11 years old, and Joey, 9 years old, to see the Sanctuary Cove apartments at 3:15 P.M.

66.    When she arrived at Sanctuary Cove's rental office, MS. WEISSINGER met with Defendants' agent, Mr. Louis Aguylar and asked if any three-bedroom apartments were available and he responded in the affirmative.

67.    When Mr. Aguylar saw MS. WEISSINGER'S children, he inquired whether the apartment was for her and all of her kids.  After MS. WEISSINGER responded, he said that she would not be able to live at Sanctuary Cove because she had "too many kids."  He also stated that if she was married and had only two kids, she would be able to live there.

68.    When MS. WEISSINGER asked why she couldn't live at Sanctuary Cove, Mr. Aguylar stated, "there could be only one heartbeat per bedroom." And that "Sanctuary Cove was built with government money and they have all kinds of rules, and having only one heartbeat per bedroom was one of them."

69.    Again, Mr. Aguylar stated that MS. WEISSINGER had "too many kids" and attempted to steer Ms. WEISSINGER to another government-funded housing project that was in the process of being built.

70.    On December 21, 2004, DONNA WEISSINGER again inquired about the availability of a three bedroom and was told that there were still three bedrooms available.  She then went to H.O.P.E., INC. to complain about this discriminatory housing practice.

71.    DONNA WEISSINGER and her children were on the verge of homelessness because of Defendant's acts.

72.    On or about 2:42 P.M., on October 21, 2004, a tester for H.O.P.E., INC., (hereinafter referred to as Tester 1), a single mother with two young daughters went to Sanctuary Cove to attempt to rent a two bedroom apartment.

73.    Tester 1 met with Mike, who advised her that although two-bedroom apartments

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 21*

were available, that other than a married couple sharing one room, only one person or child is allowed per room. In fact, Mike stated that the State of Florida passed a law that enforces us to rent only one heartbeat per room.

74.     On or about 2:45 P.M. on October 22, 2004, another tester for H.O.P.E., INC., (hereinafter referred to as Tester 2), a single mother of two young daughters went to Sanctuary Cove. When she went to the premises, she saw the Rental Standards on the front desk. The rental agent showed her floor plans of units. The rental agent reviewed the amenities and costs for each of the units.   When Tester 2 said that the two bedroom would be for only her and her two daughters, the rental agent said that each child must have their own bedroom due to the one heartbeat per room requirement.

75.     For a two bedroom, Tester 2 could not make more than $28,920.00 and the rent would be $ 836 per month. For the three bedroom, Tester 2 would be required to have an income of more than $26,400 per year and the rent would be $1,149 per month. When Tester 2 asked to see a three-bedroom apartment, she was told that there were none available until November.

76.     On October 20, 2004, another tester for H.O.P.E., INC., (hereinafter referred to as Tester 3) conducted a phone test of the property from 10:15 to 10:30 in the morning. When he called he spoke with a sales representative named Clint. Clint advised that there were two-bedroom/two bathroom and three bedroom/two bathroom apartments available. When Tester 3 said that he had two daughters, Clint said that in order for Tester 3 to rent at Sanctuary Cove, he would need to rent a three-bedroom apartment.

77.     The Defendants and their agents, based upon the Plaintiffs' and the testers' familial status, refused to show Plaintiffs' available apartments, refused to negotiate with Plaintiffs on equal terms for the rental of an apartment, discouraged Plaintiffs and others similarly situated by

publication of discriminatory regulations, steered Plaintiffs to other housing facilities, developed pretexts for failing to rent to families with children and otherwise discriminated against the Plaintiffs.

78.    Ms JENNIFER TOOLEN is a single mother with two children who presently resides at SANCTUARY COVE.    She moved in Sanctuary Cove on or about August 28, 2004. She initially requested a two bedroom and was told of the above policies and given a three-bedroom apartment. She was promised housing at $780 rate for a three bedroom and then forced to pay $880.

79.    Ms. CASEY LOCKHART is a single mother of three children who receives a Section 8 voucher.  She went to Sanctuary Cove in August of 2005.   She requested a two-bedroom apartment.   She was told that a two-bedroom apartment would be $872.00 per month.

80.    When Ms. LOCKHART told them that she had three children and that her six year old was presently living with a grandparent.  MS. LOCKHART advised that her six year old would be moving with back with her.  She was informed that she could not stay in a two-bedroom apartment with 4 people and, she would have to get a three-bedroom apartment.  She was also told that if her six year old lived there for more than fourteen days, she would be kicked out of the apartment.

81.    MS. LOCKHART was upset and asked to see the supervisor.  She was told the supervisor was busy.  MS. LOCKHART later called and spoke with the supervisor, Jill DeBoy, and was told again that she needed a three-bedroom apartment and that she should ask her Section 8 counselor to raise her voucher.

82.    When Ms. LOCKHART said that she could not do that, Ms. DeBoy stated that it was only $300.00 more and that MS. LOCKHART could come up with the additional $300.00.

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 23*

This was impossible for MS. LOCKHART because she is unemployed with three young children.

83.     MS. LOCKHART was forced to find an apartment somewhere else.

84.     Upon information and belief, and according to other testers used by H.O.P.E., other projects developed and managed by CORNERSTONE GROUP have similar housing occupancies, as follows:

      a.     The onerous standard set by Sanctuary Cove, supra;

      b.     Two people, three people and four people for one, two, and three bedroom apartments, respectively;

      c.     Two people, three people and five people for one, two, and three bedroom apartments, respectively.

85.     Such limitations on occupancy are less than the presumptively reasonable, "two-person per bedroom" guideline propounded by the U.S. Department of Housing and Urban Development.

86.     CORNERSTONE GROUP bases its decision on an outdated and stereotypical conception of low-income project housing, and states that it implements occupancy standards to maintain the worth of the asset.  Furthermore, the occupancy standards keep residents at the communities and preserve the "green space".

87.     CORNERSTONE GROUP further implements policies that demonstrate a discriminatory animus towards children and families with children as follows

      a.     In common areas, children may not use recreation, sports or hobby equipment, including, but not limited to toys, bikes, big wheels, mopeds, skateboards and roller skates is prohibited.

      b.     No one shall play in the public halls, stairways or lobby … Reasonable

supervision must be exercised when children or adults who are not legally competent are outside the Resident unit.

88.    As a result of CORNERSTONE GROUP being the 5th largest multi-family residential unit developer in the state of Florida, Defendants' discriminatory acts have had a pervasive and disparate impact on families with children.

89.    Defendants' actions described above constitute a pattern, practice, and policy of housing discrimination on the basis of familial status.  In engaging in such activities, Defendants have acted intentionally or recklessly violated Plaintiffs' civil rights and damaged the rights and feelings of Plaintiffs MILSAP, WEISSINGER, TOOLEN, LOCKHART and Plaintiffs' CHILDREN.

90.    Notwithstanding the preliminary injunction in place, Defendants continue to engage in the unlawful acts and the pattern or practice of discrimination described above.  Plaintiffs have no adequate remedy at law.  Plaintiffs are now suffering and will continue to suffer irreparable injury from defendants' acts and pattern or practice of discrimination based on familial status unless this Court provides further relief.

91.    As a result of Defendants' actions described above, Plaintiffs WEISSINGER, MILSAP and LOCKHART and their children suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of their right to equal housing opportunities regardless of familial status.  WEISSINGER, MILSAP and LOCKHART and their children suffer actual damages including, but not limited to, not being able to find adequate housing and homelessness. WESSINGER, MILSAP and LOCKHART and their children suffer actual damages including, but not limited to, continuing to reside of a residence out of necessity that is not equivalent to the residence offered by Sanctuary Cove.

92.    As a result of Defendants' actions described above, Plaintiff TOOLEN and her children suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of their right to equal housing opportunities regardless of familial status.  Plaintiff TOOLEN and her children suffer actual damages including, but not limited to, having paid and continuing to pay more money for a larger unit than was necessary.

93.    In addition, as described above, Plaintiff, H.O.P.E. has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's H.O.P.E.'S goal of promoting equality, nullified Plaintiff, H.O.P.E.'S numerous educational programs, and have forced Plaintiff, H.O.P.E. to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

94.    Additionally, Plaintiff H.O.P.E. has been forced to perform "testing" at numerous properties in Broward & Dade counties, including but not limited to: (a.) Banyan Pointe, (b.) Coconut Creek, (c.) Hibiscus Point, (d.) Olympia, (e.) Heron Point, (f.) Siesta Pointe, (g.) Center Court, (h.) Crossing at University (i.) Marbrisa, (j.) Doral Terrace Apartments, (k.) Villa Hermosa, (l.) Alhambra Cove and (m.) Oaks at Pompano, in order to discover and document Defendants' discriminatory actions.

95.    As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, H.O.P.E. by (a) interfering with the efforts and programs of Plaintiff H.O.P.E., INC. which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced H.O.P.E., INC. to devote scarce resources to identify and

counteract defendant's unlawful housing practices; and (c) interfered with the rights of H.O.P.E.,

INC.'s constituents in both Dade and Broward counties from enjoying the benefits of living in an

integrated community and thereby frustrating H.O.P.E., INC.'s mission and purpose.

96.    Any other conditions precedent to the filing of this action have been satisfied, or

have been waived.

97.    The Plaintiffs have retained the Law Offices of Matthew W. Dietz, P.L. and have

agreed to pay them a reasonable fee for their services.

## COUNT I
## VIOLATION OF THE FAIR HOUSING ACT
## DENIAL OF RENTAL OPPORTUNITIES

98.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 97 as if

alleged herein.

99.    The foregoing conduct of Defendants constitutes discrimination against any person

in the terms, conditions, and privileges of sale or rental of a dwelling, or in the provision of

services or facilities in connection with such dwelling, because of familial status, is discriminatory

and unlawful.

100.    On September 13, 1988 Congress amended the Fair Housing Act to prohibit, *inter

alia*, housing practices that discriminate on the basis of familial status. 42 U.S.C. §§ 3601 et seq. In

amending the Act, Congress recognized that "families with children are refused housing despite

their ability to pay for it." H.R. Rep. No. 711, 100th Cong., 2nd Sess. (1988).  In addition,

Congress cited a HUD survey that found 25% of all rental units exclude children and that 50% of

all rental units have policies that restrict families with children in some way. *See* Marans,

*Measuring Restrictive Rental Practices Affecting Families With Children: A National Survey*,

Office of Policy, Planning and Research, HUD, (1980). The HUD survey also revealed that almost

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 27*

20% of families with children were forced to live in less desirable housing because of restrictive policies. Congress recognized these problems and sought to remedy them by amending the Fair Housing Act to make families with children a protected class.

101.    The Defendants violated the Act "by refusing to rent, or sell after the making of a bona fide offer, or refusing to negotiate for the rental or sale of, or otherwise made unavailable or denied, a dwelling based upon familial status," which act is prohibited by the statute that is codified at 42 U.S.C. § 3604(a) and the regulations that are found at 24 CFR §§ 100.60(a)(b)(2) and (4).

102.    Defendants' actions were in total and reckless disregard of Plaintiffs rights.

103.    As a result of Defendants' actions described above, Plaintiff MILSAP, WEISSINGER and LOCKHART, and their children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.  MILSAP, WEISSINGER, and LOCKHART, their children, and all persons similarly situated suffer actual damages including, but not limited to, continuing to reside of a residence out of necessity that is not equivalent to the residences offered by CORNERSTONE GROUP and its rental communities.

104.    As a result of Defendants' actions described above, Plaintiff TOOLEN and her children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.  TOOLEN and her children, and all persons similarly situated suffer actual damages including, but not limited to, paying additional sums because of their familial status.

105.    In addition, as described above, Plaintiff, H.O.P.E. has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's H.O.P.E.'S goal of promoting equality, nullified Plaintiff, H.O.P.E.'S numerous educational programs, and have forced Plaintiff, H.O.P.E. to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

106.    Additionally, Plaintiff H.O.P.E. has been forced to perform "testing" at numerous properties in Broward & Dade counties, including but not limited to: (a.) Banyan Pointe, (b.) Coconut Creek, (c.) Hibiscus Point, (d.) Olympia, (e.) Heron Point, (f.) Siesta Pointe, (g.) Center Court, (h.) Crossing at University (i.) Marbrisa, (j.) Doral Terrace Apartments, (k.) Villa Hermosa, (l.) Alhambra Cove and (m.) Oaks at Pompano in order to discover and document Defendants' discriminatory actions.

107.    As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, H.O.P.E. by (a) interfering with the efforts and programs of Plaintiff H.O.P.E., INC. which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced H.O.P.E., INC. to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of H.O.P.E., INC.'s constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating H.O.P.E., INC.'s mission and purpose.

**COUNT II**
**VIOLATION OF THE FAIR HOUSING ACT**
**DISCRIMINATORY PUBLICATIONS**

108.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 97 as if

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 29*

alleged herein.

109.    By printing and promulgating discriminatory occupancy standards for renting at all CORNERSTONE GROUP rental communities, the Defendants violated the Act "by making, printing or publishing, or causing to be made, printed or published statements and advertisements, with respect to the rental or sale of a dwelling that indicated a preference, limitation, or discrimination based on familial status."

110.    By steering perspective tenants based on familial status, the Defendants violated the Act by restricting or attempt to restrict the choices of a person by word or conduct in connection with seeking or renting a dwelling so as to perpetuate, or tend to perpetuate, segregated housing patterns, or to discourage or obstruct choices in a community, neighborhood or development..

111.    Defendants' actions were in total and reckless disregard of Plaintiffs rights.

112.    As a result of Defendants' actions described above, Plaintiff MILSAP, WEISSINGER and LOCKHART, and their children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.  MILSAP, WEISSINGER and LOCKHART, their children, and all persons similarly situated suffer actual damages including, but not limited to, continuing to reside of a residence out of necessity that is not equivalent to the residences offered by CORNERSTONE GROUP and its rental communities.

113.    As a result of Defendants' actions described above, Plaintiff TOOLEN and her children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.  TOOLEN and her children, and

all persons similarly situated suffer actual damages including, but not limited to, paying additional sums because of their familial status.

114.    In addition, as described above, Plaintiff, H.O.P.E. has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's H.O.P.E.'S goal of promoting equality, nullified Plaintiff, H.O.P.E.'S numerous educational programs, and have forced Plaintiff, H.O.P.E. to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

115.    Additionally, Plaintiff H.O.P.E. has been forced to perform "testing" at numerous properties in Broward & Dade counties, including but not limited to: (a.) Banyan Pointe, (b.) Coconut Creek, (c.) Hibiscus Point, (d.) Olympia, (e.) Heron Point, (f.) Siesta Pointe, (g.) Center Court, (h.) Crossing at University (i.) Marbrisa, (j.) Doral Terrace Apartments, (k.) Villa Hermosa, (l.) Alhambra Cove and (m.) Oaks at Pompano in order to discover and document Defendants' discriminatory actions.

116.    As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, H.O.P.E. by (a) interfering with the efforts and programs of Plaintiff H.O.P.E., INC. which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced H.O.P.E., INC. to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of H.O.P.E., INC.'s constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating H.O.P.E., INC.'s mission and purpose.

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 31*

## COUNT III
## VIOLATION OF THE FAIR HOUSING ACT
## DISCRIMINATION IN THE TERMS, CONDITIONS AND PRIVILEGES OF A HOUSING OPPORTUNITY

117.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 97 as if alleged herein.

118.    It shall be unlawful, because of familial status, to impose different terms, conditions or privileges relating to the sale or rental of a dwelling or to deny or limit services or facilities in connection with the sale or rental of a dwelling.

119.    The Defendants violated the Act by steering tenants to larger units solely due to size of their family.

120.    The Defendants violated the Act by implementing and enforcing rules that limited the use of privileges, services or facilities associated with a dwelling because of familial status.

121.    Defendants' actions were in total and reckless disregard of Plaintiffs rights.

122.    As a result of Defendants' actions described above, Plaintiff MILSAP, WEISSINGER and LOCKHART, and their children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status.  MILSAP, WEISSINGER and LOCKHART, their children, and all persons similarly situated suffer actual damages including, but not limited to, continuing to reside of a residence out of necessity that is not equivalent to the residences offered by CORNERSTONE GROUP and its rental communities.

123.    As a result of Defendants' actions described above, Plaintiff TOOLEN and her children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury

including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status. TOOLEN and her children, and all persons similarly situated suffer actual damages including, but not limited to, paying additional sums because of their familial status.

124. In addition, as described above, Plaintiff, H.O.P.E. has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's H.O.P.E.'S goal of promoting equality, nullified Plaintiff, H.O.P.E.'S numerous educational programs, and have forced Plaintiff, H.O.P.E. to continue funding educational programs that would not have been necessary in the absence of Defendants' discriminatory actions.

125. Additionally, Plaintiff H.O.P.E. has been forced to perform "testing" at numerous properties in Broward & Dade counties, including but not limited to: (a.) Banyan Pointe, (b.) Coconut Creek, (c.) Hibiscus Point, (d.) Olympia, (e.) Heron Point, (f.) Siesta Pointe, (g.) Center Court, (h.) Crossing at University (i.) Marbrisa, (j.) Doral Terrace Apartments, (k.) Villa Hermosa, (l.) Alhambra Cove and (m.) Oaks at Pompano in order to discover and document Defendants' discriminatory actions.

126. As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, H.O.P.E. by (a) interfering with the efforts and programs of Plaintiff H.O.P.E., INC. which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced H.O.P.E., INC. to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of H.O.P.E., INC.'s constituents in both Dade and Broward counties from enjoying the benefits of living in an

*Milsap v. Cornerstone Residential, et al.,*
*Fourth Amended Class Complaint*
*Page 33*

integrated community and thereby frustrating H.O.P.E., INC.'s mission and purpose.


**COUNT IV**
**VIOLATION OF THE FAIR HOUSING ACT**
**DISPARATE IMPACT**

127.    The Plaintiffs reallege and incorporate by reference paragraphs 1 through 97 as if alleged herein.

128.    According to the 2002 National Vital Statistics Report, over sixty percent of women have two children or more, twenty eight percent of women have more than two children.

129.    According to 2004 American Community Survey, over **25%** of families of more than three people, have five or more people per household.

130.    According to 2004 American Community Survey, the number of nonfamily households with more than five persons per household is statistically negligible.

131.    The implementation of this restrictive occupancy rule and the enforcement of onerous rules limiting families with children demonstrate discriminatory intent.

132.    The Defendants' actions furthered, in theory or in practice, no legitimate, bona fide interest.

133.    The establishment and promulgation of the restrictive occupancy rules have discouraging effects to families with children who choose not to live in a housing facility that does not permit more than one or two children.

134.    The publication of the restrictive occupancy rules have discouraging effect to families with children who choose not to live in a housing facility that does not permit more than two children.

135.    The Plaintiffs would like to live free of discrimination and free of the fear of

retaliation for asserting their rights. They would like to live at a property that provides them with the opportunity to interact with other families with children.

136.    Defendants' actions were in total and reckless disregard of Plaintiffs rights.

137.    As a result of Defendants' actions described above, Plaintiff MILSAP, WEISSINGER and LOCKHART, and their children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status. MILSAP, WEISSINGER and LOCKHART, their children, and all persons similarly situated suffer actual damages including, but not limited to, continuing to reside of a residence out of necessity that is not equivalent to the residences offered by CORNERSTONE GROUP and its rental communities.

138.    As a result of Defendants' actions described above, Plaintiff TOOLEN and her children, and all persons similarly situated suffer and continue to suffer irreparable loss and injury including, but not limited to humiliation, embarrassment, emotional distress, and deprivation of her rights to equal housing opportunities regardless of familial status. TOOLEN and her children, and all persons similarly situated suffer actual damages including, but not limited to, paying additional sums because of their familial status.

139.    In addition, as described above, Plaintiff, H.O.P.E. has sponsored, promoted and organized numerous educational programs in both Broward and Dade Counties. Said programs were funded and established in order to stop current housing discrimination and future housing discrimination. Defendants' discriminatory actions have frustrated Plaintiff's H.O.P.E.'S goal of promoting equality, nullified Plaintiff, H.O.P.E.'S numerous educational programs, and have forced Plaintiff, H.O.P.E. to continue funding educational programs that would not have been

necessary in the absence of Defendants' discriminatory actions.

140.    Additionally, Plaintiff H.O.P.E. has been forced to perform "testing" at numerous properties in Broward & Dade counties, including but not limited to: (a.) Banyan Pointe, (b.) Coconut Creek, (c.) Hibiscus Point, (d.) Olympia, (e.) Heron Point, (f.) Siesta Pointe, (g.) Center Court, (h.) Crossing at University (i.) Marbrisa, (j.) Doral Terrace Apartments, (k.) Villa Hermosa, (l.) Alhambra Cove and (m.) Oaks at Pompano in order to discover and document Defendants' discriminatory actions.

141.    As a result, the described discriminatory actions undertaken by all named Defendants have injured Plaintiff, H.O.P.E. by (a) interfering with the efforts and programs of Plaintiff H.O.P.E., INC. which were intended to bring about equality of opportunity to minorities and others in housing; (b) forced H.O.P.E., INC. to devote scarce resources to identify and counteract defendant's unlawful housing practices; and (c) interfered with the rights of H.O.P.E., INC.'s constituents in both Dade and Broward counties from enjoying the benefits of living in an integrated community and thereby frustrating H.O.P.E., INC.'s mission and purpose.

WHEREFORE, Plaintiffs, TERRI MILSAP, DONNA WEISSINGER, JENNIFER TOOLAN, CASEY LOCKHART and their Children and HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC., demand judgment against Defendants, CORNERSTONE RESIDENTIAL MANAGEMENT, INC.; CORNERSTONE GROUP HOLDINGS, INC.; CORNERSTONE GROUP DEVELOPMENT CORP.; SANCTUARY COVE ASSOCIATES, LTD. d/b/a SANCTUARY COVE APARTMENTS; LAGUNA POINTE ASSOCIATES, LTD.; d/b/a LAGUNA POINTE APARTMENTS; EAGLE POINTE ASSOCIATES, LTD.; d/b/a EAGLE POINTE APARTMENTS; TUSCANY PLACE ASSOCIATES., LTD., d/b/a TUSCANY PLACE APARTMENTS; ST. CROIX ASSOCIATES, LTD., d/b/a ST. CROIX APARTMENTS;

BAYWINDS ASSOCIATES, LTD., d/b/a BAYWINDS APARTMENTS; ALHAMBRA COVE ASSOC., LTD., d/b/a ALHAMBRA COVE APARTMENTS; BONITA POINTE ASSOCIATES, LTD., d/b/ BONITE POINTE APARTMENTS; BANYAN POINTE ASSOCIATES, LTD. d/b/a BANYAN POINTE APARTMENTS; RIVER OAKS HOLDING, LTD. d/b/a RIVER OAKS APARTMENTS; MONTEREY POINTE ASSOCIATES, LTD. d/b/a MONTEREY POINTE APARTMENTS; CAPTIVA CLUB ASSOCIATES, LTD. d/b/a CAPTIVA CLUB APARTMENTS; CENTER COURT ASSOCIATES, LTD. d/b/a CENTER COURT APARTMENTS; DORAL TERRACE ASSOCIATES, LTD. d/b/a DORAL TERRACE APARTMENTS; EAGLES LANDING ASSOCIATES, LTD. d/b/a EAGLES LANDING; GOLDEN ASSOCIATES, LTD. d/b/ GOLDEN LAKES; HIBISCUS POINTE ASSOCIATES, LTD. d/b/a HIBISCUS POINTE APARTMENTS; GOLDEN ASSOCIATES II, LTD. d/b/a HIDDEN COVE; MARBRISA ASSOCIATES, LTD. d/b/a MARBRISA APARTMENTS; SIESTA POINTE ASSOCIATES, LTD. d/b/a SIESTA POINTE APARTMENTS;  PARK VIEW ESTATES, LTD. d/b/a SPINNAKER COVE; VILLA ESPERANZA ASSOCIATES, LTD. d/b/a VILLA SPERANZA APARTMENTS; VILLA HERMOSA LTD. d/b/a VILLA HERMOSA APARTMENTS;  CROSS KEYS ASSOCIATES, LTD. d/b/a CROSS KEYS APARTMENTS; BRIDGEWATER PLACE ASSOCIATES, LTD. d/b/a BRIDGEWATER PLACE; OAKS AT POMPANO, LTD. d/b/a POMPANO OAKS; GROVE POINTE LTD. PARTNERSHIP d/b/a GROVE POINTE APARTMENTS, to enjoin Defendants from discriminating against Plaintiffs herein, and preventing discrimination to families with children in all of their premises in the future as follows:

a.      That the Court declare that the actions of the Defendants violated the Fair Housing Amendments Act by discriminating against families with children;

b.     That the Court enjoin Defendants from discriminating against Plaintiffs or any other person, because of because of their familial status;

c.     That the Defendants allow DONNA WEISSINGER, TERRI MILSAP and CASEY LOCKHART, to rent apartments free from discrimination;

d.     An award of appropriate compensatory and punitive damages to TERRI MILSAP, DONNA WEISSINGER, and CASEY LOCKHART and their children, and all persons similarly situated against Defendants to compensate them for their actual damages and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

e.     An award of appropriate compensatory and punitive damages to JENNIFER TOOLEN, her children, and all persons similarly situated against Defendants to compensate them for their actual damages for the additional rent paid and for the humiliation, embarrassment and emotional distress cause by the Defendants' discriminatory actions;

f.     An award of appropriate compensatory and punitive damages to Plaintiff HOUSING OPPORTUNITIES PROJECT FOR EXCELLENCE, INC. and against Defendants to compensate it for the drain on its resources that can be reasonably attributed to the frustration of H.O.P.E., INC.'s purpose of enforcing the Fair Housing laws in Florida and to educate the public to combat the effects of the discrimination perpetrated to such victims of housing discrimination;

g.     That the Court declare that the Defendants acts' were willful and wanton and in reckless disregard of the Plaintiffs' civil rights under law;

h.     Order Defendants to provide a notice to all tenants with children for all buildings owned and/or controlled by the Defendants, their rights under the Fair Housing Act, including their right to have more than one child per room;

i.      Order Defendants to establish uniform and objective policies and procedures developed by H.O.P.E., INC. to be used in establishing occupancy limitations for all buildings owned and/or controlled by the Defendants;

j.      Establish a common fund to be administered by H.O.P.E., INC. to compensate all victims of familial discrimination for additional rent incurred;

k.      Order that the Defendants instruct all of its employees, agents, independent contractors and/or other persons who deal with the rental or management of any and all housing currently owned, managed and/or controlled by Defendants, of the terms of the Court's Order and the Fair Housing Act, and implementing regulations.

l.      Order that the Defendants shall maintain for inspection by Plaintiffs and all other tenants at its rental offices, copies of the Fair Housing Act, Fair Housing Amendments Act and implementing regulations.

m.      Order that for the three-month period beginning on the date this Court's Order becomes final and for each consecutive three-month period thereafter, for a period of three years, Defendants shall submit to H.O.P.E., INC., reports containing the information regarding the familial status of all tenants residing at Cornerstone managed properties

n.      Find that Plaintiffs are entitled to an award of attorneys' fees and costs, and reserve ruling as to the amounts and the applicable multiplier until the conclusion of the trial on this matter;

o.      And grant any other such relief as this Court deems just and equitable.

**THE PLAINTIFFS, OTHER THAN JENNIFER TOOLAN, AND THE CLASS IN WHICH SHE REPRESENTS, DEMAND A JURY TRIAL FOR ALL SUCH ISSUES SO TRIABLE IN THIS MATTER.**

*Law Offices of Matthew W. Dietz, P.L. * 2990 Southwest 35th Avenue * Miami, Florida 33133*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed and furnished by U.S. Mail this 20th day of May 2008 to: **LESLIE LANGBEIN, ESQ.**, Langbein & Langbein, P.A., 1818 NW 154th Street, Suite 105, Miami Lakes, Florida 33016; and **BRYAN T. WEST, ESQ**., Tew Cardenas, LLP, 1441 Brickell Avenue, 15th Floor, Miami FL 33131.

LAW OFFICES OF MATTHEW W. DIETZ, P.L.
2990 Southwest 35th Avenue
Miami, Florida 33133
Phone (305) 669-2822
Facsimile (305) 442-4181
E-Mail: Matthewdietz@usdisabilitylaw.com

s/ Matthew W. Dietz
BY: _____
MATTHEW W. DIETZ, ESQUIRE
FL. BAR NO.: 0084905