UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 05-60033-CIV-MARRA/JOHNSON

TERRI MILSAP, individually and
as the parent of TRISTAN BEAL,
and TERRANCE MILSAP, et al.

      Plaintiffs
vs.

CORNERSTONE RESIDENTIAL
MANAGEMENT, INC., et al.

      Defendants.
_____/

## ORDER AND OPINION

THIS CAUSE is before the Court upon Plaintiff's [sic] Motion For Reconsideration [DE 306] and Intervenor's Motion For Reconsideration [DE 399]. The motions are fully briefed, and the Court has carefully considered the filings as well as oral argument of counsel.

## Introduction

This is an action for declaratory judgment, permanent injunctive relief, and damages for discrimination on the basis of familial status in the rental of housing. The Complaint alleges violations of the Federal Fair Housing Act Amendments ("FHA") and the Florida Fair Housing Act ("FFHA"). Compl. ¶ 46.

On May 5, 2008, the Court granted in part and denied in part Defendants' Motion to Dismiss Third Amended Complaint. In the Motion to Dismiss, Defendants argued that Plaintiffs' FFHA claim was barred as a matter of law by the doctrine of

failure to exhaust administrative remedies.  Relying on the only published Florida case on point, the Court agreed and dismissed all claims under the FFHA without prejudice.  *See* DE 297 at 10-12, relying on *Belletete v. Halford,* 886 So. 2d 308 (Fla. Dist. Ct. App. 2004) (language in the FFHA that states any person "may file a complaint" with the Florida Commission on Human Relations, means that the person must exhaust administrative remedies before the Commission as a statutory prerequisite for filing civil suit against a residential landlord for discrimination under the FFHA).

After that ruling, the Attorney General moved to intervene for the limited purpose of presenting argument that the *Belletete* court's opinion on this issue was wrong, and that this Court should therefore revisit its order requiring exhaustion of administrative remedies under the FFHA.  The Court granted the Attorney General's Motion to Intervene and this unique issue was further briefed and argued.  The Attorney General states that as co-enforcer with the Florida Commission on Human Relations of the FFHA, it has always interpreted the right of the private individual to file a judicial action under the FFHA without first pursuing an administrative remedy.  DE 402 at 3.  The Court is now of the opinion that were this issue before the Florida Supreme Court, that Court would not follow the *Belletete* decision on this narrow issue, and that this Court's ruling dismissing the FFHA claims for failure to exhaust administrative remedies based on *Belletete* was incorrect.

**Discussion**

The court in *Belletete* did not consider the FFHA's legislative history.  Rather, the court interpreted the words "may file a complaint," contained in the statute, in the same way as another appellate court when it considered the same phrase ("may file a complaint") in the Florida Civil Rights Act ("FCRA").[1]  *Belletete*, 886 So.2d at 310.  *Belletete* presented a fair housing matter, not a Florida Civil Rights claim.  Nevertheless, the court did not apply fair housing case law in its analysis.  Instead of looking for direction to the FHA, after which the FFHA was patterned, the *Belletete* court looked to an employment discrimination case brought under the FCRA for guidance.  The Attorney General asserts that this approach is contrary to long-standing law interpreting nearly identical provisions of the federal counterpart.  DE 399 5-6.  Specifically, the *Belletete* court stated:

> The trial court did not err by granting summary judgment on Belletete's FHA claims in Counts I and II because the claims were barred by the doctrine of exhaustion of administrative remedies.  Sections 760.34 and 760.35 contain much the same language and structure as their counterpart in the FCRA, section 760.11. In the case of section 760.11 the "may file a complaint" language has been interpreted as follows:
>
> Section 760.11 establishes administrative and civil remedies for violations of the Florida Civil Rights Act. Although this statute states

---

[1] While the Florida Civil Rights Act provides that, in housing discrimination cases, including cases based on age, "[i]f the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for *in this section* may be initiated only after the plaintiff has exhausted his or her administrative remedy."  Fla. Stat. § 760.07 (emphasis supplied).  Plaintiffs are not proceeding under that statute in this case.

> that a complaint "may" be filed with the Commission, it is clear that such a complaint must be filed with the Commission or its federal counterpart by anyone who wishes to pursue either a lawsuit or an administrative proceeding under this act.

*Belletete*, 886 So.2d at 310.

Unlike the FFHA, the FCRA's structure is similar to Title VII of the Civil Rights Act, 42 U.S.C. 2000e, employment discrimination provisions. The FCRA, like Title VII, requires exhaustion of administrative remedies and a notice of a right to sue:

> If the statute prohibiting unlawful discrimination provides an administrative remedy, the action for equitable relief and damages provided for in this section may be initiated only after the plaintiff has exhausted his or her administrative remedy.

Fla. Stat. § 760.07.  There is no such corollary provision under the FFHA.

Florida's Fair Housing Act is the state counterpart to the Federal Fair Housing Act Amendments.  The FFHA is patterned after the FHA and courts have recognized that it is to be construed consistently with federal law.  *See Dornbach v. Holley*, 854 So.2d 211, 213 (Fla. Dist. Ct. App. 2002) ("The Florida Legislature essentially codified the Federal Act when it enacted the Florida Fair Housing Act."); *Loren v. Sasser*, 309 F.3d 1296, 1300 n.9 (11th Cir. 2002) ("The Florida Fair Housing Act contains statutory provisions that are substantively identical to the Federal Fair Housing Act.")

When a state statute has a federal counterpart, the proper standard for statutory construction is to look to both the state and federal legislative history as a guide:

> . . . Where the language of a statute is not clear, we may look to the

>legislative history for guidance. *Department of Legal Affairs v. Sanford-Orlando Kennel Club*, 434 So.2d 879, 882 (Fla. 1983). We must honor the obvious legislative intent and policy behind an enactment, even where the intent requires an interpretation that exceeds the literal language of the statute. *Byrd v. Richardson-Greenshields Sec., Inc.*, 552 So.2d 1099, 1102 (Fla. 1989).
>
>\* \* \*
>
>Because chapter 934 is modeled after a federal statute, we also may look to the federal legislative history as a guide to determine whether monitoring digital display pagers is governed by wiretap provisions. This is because a long-standing rule of statutory construction in Florida recognizes that if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts. *Gay v. Inter-County Tel. & Tel. Co.*, 60 So.2d 22 (Fla. 1952); *O'Loughlin v. Pinchback*, 579 So.2d 788, 791 (Fla. Dist. Ct. App 1991) (statutory construction should be the same to the extent the construction is harmonious with the spirit of the Florida legislation).

*State v. Jackson*, 650 So.2d 24, 27 (Fla. 1995).

The key language in Florida's FHA, upon which the *Belletete* court relied, provides in pertinent part:

>Any person who claims to have been injured by a discriminatory housing practice or who believes that he or she will be injured by a discriminatory housing practice that is about to occur **may file a complaint** with the commission.

Fla. Stat. § 760.34(1). The Federal FHA similarly provides in pertinent part:

>An aggrieved person **may**, not later than one year after an alleged discriminatory housing practice has occurred or terminated, **file a complaint** with the Secretary alleging such discriminatory housing practice.

42 U.S.C. § 3610(a)(1)(A)(i).

Additionally, Fla. Stat. § 760.35(1) states: "[a] civil action shall be commenced no later than 2 years after an alleged discriminatory housing practice has occurred." Similarly, Enforcement by Private Persons under the federal act provides:

> An aggrieved person **may commence a civil action** in an appropriate United States district court or State court not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice, or the breach of a conciliation agreement entered into under this subchapter, whichever occurs last, to obtain appropriate relief with respect to such discriminatory housing practice or breach.

42 U.S.C. § 3613(a)(1)(A). Section 3613(2) further provides "[a]n aggrieved person may commence a civil action under this subsection whether or not a complaint has been filed under § 3610(a) of this title and without regard to the status of any such complaint . . ."[2]

The language is permissive and not mandatory. The clear import of the above-referenced statutory language indicates a complainant may file a complaint and exhaust administrative remedies or, alternatively, commence a civil action.

---

[2] The language of several other statutes support this proposition. *See* Fla. Stat. § 760.34(7)(a) (stating "[t]he commission may institute a civil action in any appropriate court if it is unable to obtain voluntary compliance with §§ 760.20-760.37. The commission need not have petitioned for an administrative hearing or exhausted its administrative remedies prior to bringing a civil action."); Fla. Stat. § 760.34(8) (stating "[a]ny local agency certified as substantially equivalent may institute a civil action in any appropriate court, including the circuit court, if it is unable to obtain voluntary compliance with the local fair housing law. The agency need not have petitioned for an administrative hearing or exhausted its administrative remedies prior to bringing a civil action.")

The United States Supreme Court in *Gladstone v. Village of Bellwood*, 441 U.S. 91 (1979) concluded that the "Fair Housing Act section providing for enforcement, by a 'person aggrieved' in federal district court, of rights granted is not structured to keep complaints brought under it from reaching federal courts, or even to assure that administrative process runs its full course." *Id*. at 104.  The Supreme Court stated further that "Congress intended to provide all victims of Title VIII violations two alternative mechanisms by which to seek redress:  *immediate suit in federal court*, or a simple, inexpensive, informal conciliation procedure, to be followed by litigation should conciliation efforts fail." *Id*. (emphasis supplied).  *See also Oliver v. Foster*, 524 F.Supp. 927, 929 (S.D. Tex. 1981) ("exhaustion of administrative remedies is not a prerequisite to a claim in federal court based on 42 U.S.C. § 3612 or 42 U.S.C. § 1982.")  "The lack of an exhaustion requirement in 812 [of the Act] strongly suggests that such a requirement was not intended.  Moreover, the purpose of allowing 'immediate judicial review' . . . as an alternative to local remedies would be seriously undercut if § 812 were conditioned upon prior exhaustion of state administrative remedies." *Gladstone*, 441 U.S. at 104.

In instances where a state's highest court has not ruled on a point of state law, "'federal courts are bound by decisions of a state's intermediate appellate courts unless there is persuasive evidence that the highest state court would rule otherwise.'" *Pendergast v. Sprint Nextel Corp.*, __ F.3d __, Case No. 09-10612,  2010 WL 6745, *12 (11th Cir. Jan. 4, 2010) quoting  *Bravo v. United States*, 577 F.3d 1324,

1325 (11th Cir. 2009).

The Court agrees with Plaintiffs and the Attorney General that the *Belletete* decision seems to be an anomaly. *Belletete* is the only appellate decision in Florida on the question of administrative exhaustion under the FFHA, and the opinion did not follow the established tenet of statutory construction: " . . . if a state law is patterned after a federal law on the same subject, the Florida law will be accorded the same construction as given to the federal act in the federal courts." *State v. Jackson*, 650 So.2d 24, 27 (Fla. 1995).[3] The *Belletete* court did not consider *Gladstone* and the long line of state and federal cases in which courts interpreting the FFHA have utilized the interpretation given by federal courts of the nearly identically worded federal act. *See e.g., Loren v. Sasser*, 309 F.3d 1296, 1300 n.9 (11th Cir. 2002); *Dornbach v. Holley*, 854 So.2d 211, 212-13 (Fla. Dist. Ct. App. 2002). Because the legislative history, express language, spirit and intent of the FFHA are in direct contradiction to the *Belletete* ruling, this Court believes the Florida Supreme Court would not require exhaustion of administrative remedies as a prerequisite to filing a claim under the FFHA in court. Accordingly, it is hereby

---

[3] Recently, in a matter of first impression regarding the meaning of the language "may file a complaint" with the Commission on Human Relations in the Whistleblower's Act, the Fifth District Court of Appeal noted the *Belletete* opinion. *See University of Cent. Florida Bd. of Trustees v. Turkiewicz*, 21 So.3d 141, 146 (Fla. Dist. Ct. App. 2009). The analysis in that case, however, was different than the analysis used by the court in *Belletete*. The *Turkiewicz* court analyzed the disputed language in context of other language in the Whistleblower's Act, as well as that act's legislative history.

ORDERED AND ADJUDGED Plaintiff's [sic] Motion For Reconsideration [DE 306] is GRANTED, and Intervenor's Motion For Reconsideration [DE 399] is GRANTED.  The portion of the Court's May 5, 2008 Order and Opinion on Defendants' Motion to Dismiss Third Amended Complaint [DE 297] dismissing without prejudice all claims under Florida's Fair Housing Act for failure to exhaust administrative remedies is vacated. Plaintiffs' claims under the Florida Housing Act are reinstated.  Defendants shall answer those claims within the time allowed under the Local Rules of the Southern District of Florida.

DONE AND ORDERED in Chambers, at West Palm Beach, Palm Beach County, Florida,  this 1st day of February, 2010.

_____
KENNETH A. MARRA
United States District Judge

Copies furnished to:
All counsel of record